FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 MAY 20  PM 12: 27

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BRITTANY LAMB,                          *
                                        *
        Plaintiff,                      *
                                        *
            v.                          *            CV 119-030
                                        *
RICHARD ROUNDTREE, Sheriff of           *
Richmond County, and HOY                *
DARLING, Deputy of the                  *
Richmond County Sheriff's               *
Office, in Their Individual             *
and Official Capacities,                *
                                        *
        Defendants.                     *

_____

O R D E R

_____

Before the Court is Defendants' unopposed motion to dismiss.
(Doc. 18.)   For the following reasons, Defendants' motion is
**GRANTED IN PART** and the remainder of the case is **REMANDED**.

I. BACKGROUND

On January 28, 2017, Defendant Darling stopped Plaintiff and
issued her citations for speeding, failure to maintain lane, and
driving under the influence.   (Am. Compl., Doc. 6, ¶¶ 4, 5.)
Defendant Darling obtained a warrant to draw Plaintiff's blood to
determine her blood alcohol content.   (Id. ¶ 8.)   Pursuant to the
warrant, an employee at Augusta University drew Plaintiff's blood.
(Id. ¶ 11.)   Defendant Roundtree, the other named defendant, is

the Sheriff of Richmond County, Georgia. (Id. ¶ 1.) Defendant Darling is a deputy sheriff. (Id. ¶ 2.)

Plaintiff advances several claims against Defendants. First, Plaintiff asserts Section 1983 claims against Defendants in their official and individual capacities for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution. (Id. ¶¶ 18-20.) Second, Plaintiff brings a vicarious liability claim for a "persistent and widespread practice of promoting the use of . . . illegal warrants to draw the blood of citizens." (Id. ¶ 23.) Third, the complaint contains allegations that Defendants violated Georgia law regarding obtaining warrants to draw blood. (Id. ¶¶ 26-32.)

On March 13, 2020, Defendants asked the Court to permit the filing of their renewed motion to dismiss and contemporaneously filed the motion to dismiss. (Docs. 17, 18.) Plaintiff filed no response to the motion to dismiss prior to the Court granting Defendants' motion. (Order, Doc. 19.) In granting Defendants' motion, the Court provided Plaintiff an additional fourteen days to respond to the renewed motion to dismiss. (Id. at 3.) Still, Plaintiff filed no response. Therefore, Defendants' motion to dismiss is deemed unopposed.[1] LR 7.5, SDGa.

---

[1] Defendants also filed a motion for summary judgment (Doc. 14) to which Plaintiff offered no response. From the docket, it appears Plaintiff last participated in this action nearly one year ago. (See Rule 26(f) Report, Doc. 12.) The Court recognizes that Plaintiff opposed Defendants' initial motion to

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of" both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,[2] to 'state a claim to relief that is plausible on its face.'" Id. (footnote added) (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability

dismiss. (Doc. 8.) Therefore, although the present motion is deemed unopposed, the Court considers Plaintiff's original opposition where applicable.
[2] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule] 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Even though the motion is unopposed, the Court still determines whether dismissal is proper. See Branch v. O'Brien, No. 4:14-cv-147, 2014 WL 7405780, at *1 (S.D. Ga. Dec. 29, 2014).

## III. DISCUSSION

Defendants present several arguments in support of their motion to dismiss, the Court evaluates each in turn.

### A. The Eleventh Amendment

Plaintiff brings Section 1983 claims against Defendants both in their official and individual capacities. (Am. Compl., ¶¶ 1, 2.) The Section 1983 claims against Defendants in their official capacities, however, are subject to dismissal.

4

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Controlling interpretations of the Eleventh Amendment firmly "establish that an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (citation and internal quotation marks omitted). Eleventh Amendment immunity stays "in effect when [s]tate officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985). The bar remains absent state waiver of immunity or congressional override. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).

The Eleventh Circuit has decided that sheriffs in Georgia are "arms of the state" for Eleventh Amendment purposes. Manders v. Lee, 338 F.3d 1304, 1328 (11th Cir. 2003). The protection extends to deputy sheriffs also. Grech v. Clayton Cty., 335 F.3d 1326, 1336 (11th Cir. 2003). This District confirmed that Eleventh Amendment protections for sheriffs and deputies reach beyond the jailhouse to other traditional law enforcement functions, including arrests. Temple v. McIntosh Cty., No. 2:18-cv-91, 2019 WL 287482, at *4 (S.D. Ga. Jan. 22, 2019). Plaintiff's allegations

5

fail to show Defendants participated in non-traditional law enforcement functions throughout the arrest, and therefore, Defendants qualify as arms of the state entitled to Eleventh Amendment immunity.[3] Thus, Plaintiff's Section 1983 claims against Defendants in their official capacities are dismissed as a matter of law.

## B. Qualified Immunity

Defendants argue Plaintiff fails to state a Section 1983 claim against Defendants in their individual capacities as a matter of law under the doctrine of qualified immunity. (Mot. to Dismiss Am. Compl., Doc. 18, at 3-8.) Qualified immunity is a judicially created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For qualified immunity to apply, a public official first must show that he "act[ed] within the scope of his discretionary authority when the allegedly wrongful acts

---

[3] Defendants assert that "sheriffs and their deputies are not subject to suit in an official capacity under [Section] 1983." (Mot. to Dismiss Am. Compl., Doc. 18, at 2.) As noted, Defendants contention is correct that they are entitled to immunity pursuant to the Eleventh Amendment. Once Defendants removed the case, they preserved immunity as to liability but waived immunity from suit in federal court. See Hardy v. Ga. Dep't of Corr., No. CV 117-172, 2019 WL 4670758, at *4 (S.D. Ga. Sept. 24, 2019) (citing Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613 (2002); Stroud v. McIntosh, 722 F.3d 1294 (11th Cir. 2013); Page v. Hicks, 773 F. App'x 514 (11th Cir. 2019)).

6

occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citation omitted). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). The complaint offers no allegations creating doubt that Defendants Darling and Roundtree acted with discretionary authority at all relevant times. (See Resp. Opp'n Mot. to Dismiss, Doc. 8, at 5); cf. Mathis v. Vizcarrondo, 792 F. App'x 746, 748 (11th Cir. 2019) (finding warrantless cellphone search within officer's discretionary authority).

Once a defendant establishes that he was "acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley, 327 F.3d at 1194; see also Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016) (applying same burden-shifting framework in Rule 12(b)(6) analysis). Accordingly, the Court must look to the complaint to see if Plaintiff includes sufficient facts demonstrating that Defendants are not entitled to qualified immunity. Bowen, 826 F.3d at 1319. In doing so, the Court must consider two issues: "(1) whether, taken in the light most favorable to [Plaintiff], the facts alleged show [Defendants']

7

conduct violated a constitutional right, and, (2) if so, whether the right was clearly established." Id. (citation and internal quotation marks omitted). Because the failure to state a claim argument overlaps with the first prong of the qualified immunity test, the Court analyzes them together. Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010) (quoting GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998), overruling on other grounds recognized by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010)) ("At the motion to dismiss stage in the litigation, 'the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.'").

Before proceeding to determine whether Plaintiff's allegations establish a violation of her constitutional rights, the Court must determine the constitutional rights at issue. Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights, a situation the Middle District of Florida recently encountered. See Lloyd v. Leeper, ___ F. Supp. 3d ___, 2020 WL 1529767, at *3-4 (M.D. Fla. Mar. 31, 2020). In Lloyd, the plaintiff alleged Section 1983 violations for an illegal stop, illegal search, and illegal seizure. Id. at *1.

It is well-established that the Fourth Amendment is made applicable to the states by the Fourteenth Amendment. Terry v. Ohio, 392 U.S. 1, 8 (1968). The Fourteenth Amendment, though,

does not provide an independent source of recovery in this context.

Lloyd, 2020 WL 1529767, at *3-4.

> Clearly, the gravamen of the . . . [c]omplaint was the
> allegedly improper [search and] seizure[] for which the
> Defendants were responsible. The right to be free from
> unreasonable searches and seizures is protected by the
> Fourth Amendment, rather than the Fourteenth, and where
> a particular Amendment provides an explicit textual
> source of constitutional protection against a particular
> sort of government behavior, that Amendment, not the
> more generalized notion of substantive due process found
> in the Fourteenth Amendment must be the guide for
> analyzing the claim. Albright v. Oliver, 510 U.S. 266,
> 273 . . . (1994). Thus, as to the allegations made in
> the . . . [c]omplaint, a Fourteenth Amendment claim
> would have been improper.

Lloyd, 2020 WL 1529767, at *3 (quoting Signature Pharmacy, Inc. v.

P. David Soares, No. 6:08-cv-1853-Orl-31GJK, 2012 WL 1631681, at

*2 (M.D. Fla. May 8, 2012)). Because the complaint asserts no

independent basis for recovery under the Fourteenth Amendment,

Plaintiff's Section 1983 claim premised on the Fourteenth

Amendment must be dismissed. The Fourth Amendment's prohibition

against unreasonable searches and seizures, however, may serve as

the foundation of a Section 1983 claim. See Brown v. City of

Huntsville, 608 F.3d 724, 737 (11th Cir. 2010). Therefore, the

Court continues its analysis to determine whether Defendants are

entitled to qualified immunity as to Plaintiff's claim that

Defendants violated her Fourth Amendment rights.

As noted, the second step of the qualified immunity analysis

requires determining whether Defendants violated a constitutional

protection.   Because Defendants show they acted within their discretionary authority, the burden shifts to Plaintiff to demonstrate qualified immunity is inapplicable.   As the Court understands, Plaintiff's assertions are that (1) Defendants drew Plaintiff's blood without a warrant constituting an unreasonable search and seizure and (2) Defendants' drawing of Plaintiff's blood without a warrant constituted excessive force.

A common theme across both theories is that Defendants acted under color of law to draw blood without a warrant.   Attached to Defendants' motion to dismiss is an executed search warrant.[4] (Mot. to Dismiss Am. Compl. Ex., Doc. 18-1.)   Although Plaintiff offered no response to the present motion to dismiss, Plaintiff's response to Defendants' initial motion to dismiss argued that despite relevant local legislation permitting clerks and deputy clerks to issue arrest warrants, the word "search" does not appear. (Resp. Opp'n Mot. to Dismiss, at 7.)

---

[4] Generally, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court is restrained to consider only the allegations within the four corners of the complaint. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).   A district court, however, may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018); see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).   Here, Plaintiff's complaint references the warrant, it is central to Plaintiff's Section 1983 claims, and Plaintiff offers no dispute as to the warrant's authenticity.   Therefore, the Court may consider the warrant at this stage.

The Court recently addressed the present issue with respect to an arrest warrant. In Hesed-El v. McCord, the plaintiff alleged that a clerk of the Richmond County Civil Court improperly made a probable cause determination and issued an arrest warrant. No. CV 117-146, 2019 WL 1441624, at *1, *4-5 (S.D. Ga. Mar. 29, 2019). In dismissing the plaintiff's complaint, the Court first noted the two requirements for determining probable cause and issuing a warrant to satisfy the Fourth Amendment as set forth in Shadwick v. City of Tampa: the clerk must be (1) "neutral and detached" and (2) "capable of determining whether probable cause exists for the requested . . . search." Hesed-El, 2019 WL 1441624, at *5 (quoting Shadwick v. City of Tampa, 407 U.S. 345, 350-51 (1972)). "[S]earch and arrest warrants long have been issued by persons who are neither lawyers nor judges." Illinois v. Gates, 462 U.S. 213, 235 (1983). In Shadwick, the Supreme Court concluded that a clerk granted authority to issue warrants — combined with the two Fourth Amendment requirements — may issue a warrant. 407 U.S. at 354.

Here, Plaintiff omitted argument that the warrant signatory was neither neutral and detached nor unable to determine probable cause. Plaintiff, instead, relies on the absence of authority to issue the warrant. The Georgia Constitution expressly permits the existence of the Civil Court of Richmond County. GA. CONST. art. 6, § 10, ¶ 1(5) ("The Civil Court[] of Richmond . . . [C]ount[y] . . . shall continue with the same

11

jurisdiction as such court[] . . . ha[s] on the effective date of this article until otherwise provided by law.").   The Georgia General Assembly's local legislation authorizes clerks and deputy clerks of the Civil Court of Richmond County the authority to issue search warrants:

> The clerk and deputy clerks of said Civil Court shall have complete power and authority, co-existent and coordinate with the power of the judges of said court, under the provisions of this Act, to issue any and all warrants, civil and criminal . . . which under the laws of this State are performable by a justice of the peace.

1974 Ga. Laws 2410, at 2417, § 12.   The Georgia Legislature revised section 2 of 1974 Ga. Laws 2410 to state:

> The Clerk and each deputy clerk of the Civil Court of Richmond County shall continue to exercise the power and authority, under the immediate supervision of the chief judge or the presiding judge of said court, to issue warrants for the arrest of persons charged with the commission of crimes committed in Richmond County, to the same extent as these clerks and deputy clerks have heretofore been authorized to act.

1984 Ga. Laws 4467, at 4471, § 2(b).   Nothing in 1984 Ga. Laws 4467, however, strikes section 12 of 1974 Ga. Laws 2410.   See 1984 Ga. Laws 4467.   The information considered at this stage demonstrates the signatory acted with authority granted by the Georgia General Assembly, and Defendant Darling directed the drawing of Plaintiff's blood pursuant to that warrant.   Therefore,

Defendants Roundtree and Darling are entitled to qualified immunity because Plaintiff alleges no constitutional violation.[5]

## C. Vicarious Liability

Generally, "supervisory officials are not[]liable under [Section] 1983 for the unconstitutional acts of their subordinates on the basis of . . . vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted); accord Stallworth v. Wilkins, 802 F. App'x 435, 2020 WL 261659, at *7 (11th Cir. 2020). To impose supervisory liability for Section 1983 violations, a plaintiff must show either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall, 610 F.3d 701. Plaintiff offers no allegation that Defendant Roundtree personally participated in the alleged unconstitutional conduct, and for the reasons above, Defendant Darling did not personally participate in a constitutional violation.

To establish a causal connection, a plaintiff must show: (1) "a history of widespread abuse put[] the responsible supervisor on

_____

[5] Because the Court concludes Plaintiff fails to allege Defendants violated a constitutional right, the Court need not analyze whether the right was clearly established.

notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so"; (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotation marks omitted) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003)). Plaintiff's complaint alleges in conclusory fashion that "Defendants have a persistent and widespread practice of promoting the use of . . . illegal warrants to draw the blood of citizens illegally." (Compl., ¶ 23.) Consequently, Plaintiff apparently attempts to assert a widespread practice and policy as justification for supervisory liability. For the reasons stated herein, however, Plaintiff alleges no underlying unconstitutional practice or policy thereby prohibiting recovery against Defendants on vicarious liability grounds.

## D. State Law Claim

Because the case is before the Court on federal question jurisdiction, the Court exercises supplemental jurisdiction over Plaintiff's state law claim. See 28 U.S.C. § 1367(a).

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if — (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). For that reason, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). The district courts' discretion extends to remanding cases properly removed to federal court. Carnegie-Mellon, 484 U.S. at 357.

Here, the Court finds the factors contained in section 1367(c) favor remand. First, in the interest of comity, allowing the state court to decide the remaining state law claim is preferred. Second, all federal law claims are dismissed. Third, as a result of dismissal of all federal claims, the remaining state law claim predominates over any claims over which the Court possesses

original jurisdiction.   Considering these factors, the Court exercises its discretion to remand the remaining state law claim.[6]

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 18) is **GRANTED IN PART**.   Counts I and II of Plaintiff's complaint are **DISMISSED**.[7]   The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff as to Counts I and II; **REMAND** the remainder of this case to the Superior Court of Richmond County, Georgia; **TERMINATE** all remaining motions and deadlines, if any; and **CLOSE** this case as before the United States District Court for the Southern District of Georgia, Augusta Division.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of May, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] The Court recognizes that Defendants filed a motion for summary judgment in this case.  One could consider that remanding the case with a pending summary judgment motion breaks against the notion of judicial efficiency.  But the Eleventh Circuit recognized that district courts maintain discretion to remand even when summary judgment resolves all claims over which the district court possesses original jurisdiction.  Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005).   Therefore, the Court exercises its discretion to remand notwithstanding the pending motion for summary judgment.

[7] To the extent Plaintiff asserts a claim for attorney's fees under federal law (Compl., ¶ 38), for the reasons stated herein, that claim is **DISMISSED**.